# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

VA VUE VANG,           )
                              )
         Plaintiff,      )
                              )
     v.                  )       1:18CV255
                              )
ANDREW M. SAUL,       )
Commissioner of Social    )
Security,[1]             )
                              )
         Defendant.      )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Va Vue Vang, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 15, 18; see also Docket Entry 16 (Plaintiff's Memorandum); Docket Entry 19 (Defendant's Memorandum)). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

---

[1] The United States Senate confirmed Andrew M. Saul as the Commissioner of Social Security on June 4, 2019, and he took the oath of office on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Nancy A. Berryhill as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging a disability onset date of April 1, 2010.  (Tr. 178-84.)  Upon denial of that application initially (Tr. 62-68, 85-88) and on reconsideration (Tr. 69-84, 90-93), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 94-95).  Plaintiff, her attorney, a Hmong interpreter, and a vocational expert ("VE") attended the hearing. (Tr. 32-61.)  The ALJ subsequently determined that Plaintiff did not qualify as disabled under the Act.  (Tr. 7-21.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 177, 246-47), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings:

> 1.  [Plaintiff] last met the insured status requirements of the . . . Act on December 31, 2014.
>
> 2.  [Plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of April 1, 2010 through her date last insured of December 31, 2014.
>
> 3.  Through the date last insured, [Plaintiff] had the following severe impairments: bladder issues, vaginal wall prolapse, obesity, depression, and anxiety.
>
> . . .
>
> 4.  Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.  . . . [T]hrough the date last insured, [Plaintiff]
had the residual functional capacity to perform medium
work . . . except with simple, repetitive tasks; with
occasional interaction with the general public and
coworkers; no fast paced production rate work; and few
workplace changes.

. . .

6.  Through the date last insured, [Plaintiff] was
unable to perform any past relevant work.

. . .

10.  Through the date last insured, considering
[Plaintiff's] age, education, work experience, and
residual functional capacity, there were jobs that
existed in significant numbers in the national economy
that [Plaintiff] could have performed.

. . .

11.  [Plaintiff] was not under a disability, as defined
in the . . . Act, at any time from April 1, 2010, the
alleged onset date, through December 31, 2014, the date
last insured.

(Tr. 12-21 (internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits."  Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope
of . . . review of [such a] decision . . . is extremely limited."
Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  Even given
those limitations, the Court should remand this case for further
administrative proceedings.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted).  "Where conflicting evidence allows reasonable minds to differ as to

whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro,

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## B. Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ's conclusion that [Plaintiff] has a limited education and is able to communicate in English is not supported by substantial evidence [ and ] the ALJ's failure to account for . . . [Plaintiff's] illiteracy and limited ability to communicate in English in the hypothetical posed to the VE is harmful error" (Docket Entry 16 at 5 (bold font and single-spacing omitted));

2) "the ALJ's failure to properly account for [Plaintiff's] moderate limitations in concentration, persistence, and pace [('CPP')] in the RFC is harmful error" (id. at 11 (bold font and single-spacing omitted));

3) "[t]he ALJ's failure to properly account for the total limiting effects of [Plaintiff's] impairments and failure to provide a logical bridge between the evidence in the record, [the

_____

[5] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

ALJ's] conclusions and her RFC findings is error" (<u>id.</u> at 16 (bold font and single-spacing omitted)); and

4) "[r]emand is required because at the time [the ALJ's] decision was issued, [her] appointment did not comply with the Appointments Clause" (<u>id.</u> at 19 (bold font and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 19 at 3-29.)

## 1. Educational Level and Ability to Communicate in English

In Plaintiff's first assignment of error, she maintains that "[t]he ALJ's conclusion that [Plaintiff] has a limited education and is able to communicate in English is not supported by substantial evidence" (Docket Entry 16 at 5 (bold font and single-spacing omitted)), as well as that "the ALJ's failure to account for . . . [Plaintiff's] illiteracy and limited ability to communicate in English in the hypothetical posed to the VE is harmful error" (<u>id.</u> (bold font and single-spacing omitted)). In that regard, Plaintiff claims that the record establishes "that she had no formal schooling, could not perform simple addition or subtraction, [] and is not able to read or to write more than her name in English" (<u>id.</u> at 7 (citing Tr. 14, 15, 17-18, 202, 204, 211, 284-86)), as well as that she required a Hmong interpreter at the hearing (<u>id.</u> at 7-8 (citing Tr. 109, 170)) and that "treatment notes reflect that [she] required [the] assistance of family

members at medical appointments, to relay messages by phone and at her appointment to [apply for DIB] secondary to her limited ability to communicate in English" (id. at 8 (citing Tr. 202, 204, 252)). Plaintiff argues that the ALJ's error in this regard resulted in prejudice, because the VE testified that all three jobs she cited in response to the ALJ's dispositive hypothetical question (and which the ALJ adopted at step five of the SEP (see Tr. 20)) involved at least some ability to read and write. (Id. at 9 (citing Tr. 59).) Plaintiff further points out that, according to the Dictionary of Occupational Titles ("DOT"), all three jobs involve 1) some form of "written record-keeping and/or counting, totaling or measuring" (id. (citing DOT, No. 979.687-030 (Inspector, Furniture Decals), 1991 WL 688697 (G.P.O. 4th ed. rev. 1991), DOT, No. 369.687-026 (Marker), 1991 WL 673074, DOT, No. 920.587-018 (Packager, Hand), 1991 WL 687916)), and 2) Reasoning Development Level 2 ("RDL 2"), which requires a worker to "'apply commonsense understanding to carry out detailed but uninvolved written or oral instructions'" (id. at 10 (quoting DOT, App'x C ("Components of the Definition Trailer"), § III ("General Educational Development"), 1991 WL 688702) (emphasis added)). Plaintiff's contentions have merit and warrant remand.

As an initial matter, the Court should conclude that the ALJ did not err by finding that Plaintiff could communicate in English. (See Tr. 20.) Plaintiff placed great emphasis on the fact that she

utilized the services of an interpreter at the hearing before the ALJ as evidence of her inability to communicate in English (see Docket Entry 16 at 7-8); however, Plaintiff's need for an interpreter to help her understand the relatively complex medical and legal terminology in use at such a hearing does not demonstrate an inability to understand and participate in more simple communications in English.[6] Moreover, as the ALJ expressly noted (see Tr. 18, 19), consultative psychological examiner Dr. Gregory A. Villarosa reported "[n]o language-based dysfunction" and remarked that, although Plaintiff "sp[oke] English somewhat haltingly," she "understood and expressed herself adequately" (Tr. 286).

In contrast, the ALJ did err by concluding that Plaintiff possessed a "limited education." (See Tr. 20, 56.) The regulations define the relevant levels of education as follows:

> . . . Illiteracy means the inability to read or write. [The SSA] consider[s] someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.

> . . . Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. [The SSA] generally

---

[6] In fact, Plaintiff's attorney explained to the ALJ at the end of the hearing that the Hmong language contains fewer words than the English language and lacks many words for medical and technical terms in English. (See Tr. 60-61.)

> consider[s] that <u>formal schooling at a 6th grade level or less</u> is a marginal education.
>
> . . . <u>Limited education</u> means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. [The SSA] generally consider[s] that a <u>7th grade through the 11th grade level of formal education</u> is a limited education.

20 C.F.R. § 404.1564(b) (emphasis added). Here, the record contains <u>unrebutted</u> evidence that Plaintiff did not possess a "limited education." For example, Plaintiff testified that she "ha[d] not had <u>any</u> schooling" and that she "only learned to write [her] name." (Tr. 37 (emphasis added); <u>see also</u> Tr. 37-38 (reaffirming lack of any schooling in native country or United States), 211 (Disability Report remark that "there was no education available for [Plaintiff] when [she] was a child" (standard capitalization applied)).) Furthermore, in connection with a consultative psychological examination, Dr. Villarosa observed that Plaintiff could neither spell any words beyond her own name nor perform simple addition and subtraction. (<u>See</u> Tr. 286.) In other words, the record conclusively contradicts the ALJ's finding that Plaintiff possessed a "limited education" (Tr. 20; <u>see also</u> Tr. 56 (including "limited education" in dispositive hypothetical question to VE)), i.e., "reasoning, arithmetic, and language skills" equivalent to a 7th to 11th grade education, 20 C.F.R. § 404.1564(b)(3).

The Commissioner nevertheless argues that "the ALJ correctly used [Rules 203.18 through 2013.24 of the Medical-Vocational Guidelines ('Grids')[7]] as a framework in her decision-making" (Docket Entry 19 at 4 (citing Tr. 20-21)), because those Rules direct a conclusion of "[n]ot disabled," regardless of Plaintiff's education level or previous work experience, i.e., even if Plaintiff qualified as "illiterate" and possessed no prior work experience (id. at 5 (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 2, §§ 203.18 - 203.24); see also id. (noting that "'the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance'" (quoting 20 C.F.R. Pt. 404, Subpt. P, App'x 2, § 200.00(h)(4)(i)) (emphasis omitted)).  The Court should reject that argument.

Where, as in this case, "the claimant reaches step five, the burden shifts to the [Commissioner] to produce evidence that other jobs exist in the national economy that the claimant can perform

---

[7] "The Grids categorize jobs by their physical-exertion requirements, namely, sedentary, light, medium, heavy, and very heavy.  There are numbered tables for the sedentary, light, and medium level (tables 1, 2, and 3, respectively), and a specific rule for the heavy and very heavy levels.  Based on the claimant's RFC, the ALJ must first determine which table to apply, i.e., if the claimant's RFC limits him to a sedentary exertional level, then Table No. 1 is the appropriate table.  Next, based on the claimant's age, education, and previous work experience, the [table or] rule directs a finding of 'disabled' or 'not disabled.'"  Black v. Astrue, No. 3:09CV599, 2010 WL 2306130, at *4 (E.D. Va. Apr. 26, 2010) (unpublished) (internal citations and footnotes omitted), recommendation adopted, 2010 WL 2306136 (E.D. Va. June 3, 2010) (unpublished).

considering his [or her] age, education, and work experience."
Hunter, 993 F.2d at 35. "The Commissioner may meet this burden by
relying on the [Grids] or by calling a [VE] to testify." Aistrop
v. Barnhart, 36 F. App'x 145, 146 (4th Cir. 2002) (citing 20 C.F.R.
§ 404.1566)). "[W]hen non-exertional as well as exertional
limitations exist, the testimony of a [VE] is normally required,"
Hooper v. Heckler, 752 F.2d 83, 88 (4th Cir. 1985); however, "not
every non-exertional limitation . . . preclude[s] reliance on the
Grids," Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989).

In this case, the Commissioner's argument falls short because
the ALJ included multiple non-exertional limitations in the RFC and
dispositive hypothetical question (see Tr. 15, 56-57), which he
determined "impeded" Plaintiff's "ability to perform all or
substantially all of the requirements of [medium] work" (Tr. 20).
The ALJ thus consulted the VE "[t]o determine the extent to which
[the non-exertional] limitations erode[d] the unskilled medium
occupational base." (Id.) Given the ALJ's reliance on the VE's
testimony (see Tr. 20-21), which responded to a hypothetical
question that erroneously characterized Plaintiff as having a
"limited education" (Tr. 56),[8] the Grids' allowance for illiteracy

---

[8] Although the VE presumably heard Plaintiff testify during the hearing
that she lacked "any schooling" and "only learned to write [her] name" (Tr. 37),
the VE nevertheless had to answer the hypothetical questions actually posed by
the ALJ, and those questions all characterized Plaintiff as having a "limited
education" (Tr. 56-58).

and/or inability to communicate in English does not impact the Court's analysis.

Moreover, the ALJ's error in mischaracterizing Plaintiff's education level as "limited" does not qualify as harmless under the circumstances presented here.  As Plaintiff argues (see Docket Entry 16 at 9), the VE testified that all three of the jobs she cited in response to the dispositive hypothetical question require at least some ability to read and write:

> [PLAINTIFF'S ATTORNEY]    Do[] these jobs require a person to be able to read and write English?
>
> [VE]                     Very little.

(Tr. 59 (emphasis added).)  Furthermore, as Plaintiff pointed out, the DOT reflects that all three of the jobs in question involve some form of "written record-keeping and/or counting, totaling or measuring."  (Docket Entry 16 at 9 (emphasis added) (citing DOT, No. 979.687-030 (Inspector, Furniture Decals), 1991 WL 688697 ("count[ing] acceptable decals and record[ing] totals on production records"), DOT, No. 369.687-026 (Marker), 1991 WL 673074 ("recording . . . articles received for cleaning," "record[ing] defects," "[m]easur[ing] articles . . . and record[ing] measurements," and "count[ing] finished articles"), DOT, No. 920.587-018 (Packager, Hand), 1991 WL 687916 ("[r]ecord[ing] information such as weight, time, and date packaged")).)  Given that all three jobs do require some ability to read and write, the

Court cannot speculate whether the VE would have cited the same three jobs (or other jobs available in significant numbers in the national economy) if the ALJ had adopted either the "marginal education" or "illiterate" characterizations of Plaintiff's educational level.

The Commissioner contends that any error by the ALJ in determining Plaintiff's educational level remains "harmless because Plaintiff's past relevant work as a machine operator was semi-skilled" (Docket Entry 19 at 8 (formatting omitted)), and the DOT rated that job as RDL 2 and Language Development Level ("LDL") 2 (id. at 10 (citing DOT, No. 505.685-014 (Metal-Spraying-Machine Operator, Automatic II), 1991 WL 673676)). That contention misses the mark. Plaintiff's apparent prior ability to perform a particular job rated by the DOT as RDL and LDL 2 shows that she possessed sufficient reasoning and language skills to perform that job, but does not demonstrate that she acquired skills equivalent to a 7th to 11th grade education as required by a "limited education," 20 C.F.R. § 404.1564(b)(3), or sufficient skills to perform the specific jobs cited by the VE (and adopted by the ALJ).

In short, Plaintiff has established that the ALJ committed prejudicial error by finding that Plaintiff possessed a "limited education," requiring remand.

## 2. CPP

Plaintiff next maintains that "[t]he ALJ's failure to properly account for [Plaintiff's] moderate limitations in [CPP] in the RFC is harmful error." (Docket Entry 16 at 11 (bold font and single-spacing omitted).) More specifically, Plaintiff argues that the Court should remand her case, because the Fourth Circuit has held that "'an ALJ does not account for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work'" (id. at 12 (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015))), as "'the ability to perform simple tasks differs from the ability to stay on task'" (id. at 13 (quoting Mascio, 780 F.3d at 638)), such that only a restriction dealing with the ability to stay on task "'would account for a claimant's limitation in [CPP]'" (id. (quoting Mascio, 780 F.3d at 638)). According to Plaintiff, "[w]hile the ALJ summarize[d] the evidence[,] she fail[ed] to explain how that evidence support[ed] her RFC findings and . . . [or how] she accounted for [Plaintiff's] moderate limits in [CPP]." (Id. at 13-14.) Plaintiff's contentions fail to warrant relief.

The Fourth Circuit has indeed held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638. However, as a neighboring district court has explained:

> Mascio does not broadly dictate that a claimant's
> moderate impairment in [CPP] always translates into a
> limitation in the RFC. Rather, Mascio underscores the
> ALJ's duty to adequately review the evidence and explain
> the decision . . . . An ALJ may account for a claimant's
> limitation with [CPP] by restricting the claimant to
> simple, routine, unskilled work where the record supports
> this conclusion, either through physician testimony,
> medical source statements, consultative examinations, or
> other evidence that is sufficiently evident to the
> reviewing court.

Jones v. Colvin, No. 7:14CV273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (magistrate judge's recommendation adopted by district judge) (unpublished) (emphasis added); see also Hutton v. Colvin, No. 2:14CV63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015) (unpublished) (finding reliance on Mascio "misplaced," because ALJ "gave abundant explanation" for why unskilled work adequately accounted for claimant's moderate limitation in CPP, by highlighting the claimant's daily activities and treating physicians' opinions).  Here, the ALJ's decision provides a sufficient explanation as to why restrictions to "simple, repetitive tasks[] with . . . no fast paced production rate work[] and few workplace changes" (Tr. 15) sufficiently accounted for Plaintiff's moderate deficit in CPP.

First, in summarizing the pertinent evidence of record, the ALJ made the following observations:

- Plaintiff "ha[d] no history of mental health treatment[ and ] t[ook] no psychotropic medications" (Tr. 17; see also Tr. 284);

- "Although [Plaintiff] did not have schooling, she worked in industry for 26 years and she h[eld] a valid driver's license" (Tr. 19; <u>see also</u> Tr. 37-38, 284-85); and

- Plaintiff reported that she cooked meals, cleaned the house, watched television, and shopped in stores (Tr. 17; <u>see also</u> Tr. 284).

Second, the ALJ discussed and weighed the opinion evidence as it related to Plaintiff's ability to function mentally. (<u>See</u> Tr. 19.) In that regard, the ALJ accorded "some weight" to the opinion of the state agency psychological consultant at the reconsideration level of review (<u>id.</u>), who opined that, despite moderate limitation in CPP (<u>see</u> Tr. 77), Plaintiff "retain[ed] the ability to perform simple, repetitive tasks, and <u>likely ha[d] abilities to perform tasks at higher levels in spite of the moderate limitations</u>" (<u>see</u> Tr. 80-81 (emphasis added)). The ALJ also afforded "some weight" the Dr. Villarosa's opinions (Tr. 19), which include that Plaintiff's "sustained attention and concentration was fair," that she remained able to "take care of the household doing cleaning and cooking chores" and to "perform some simple, routine, and repetitive activities," as well as that she could "follow simple directions" (Tr. 286).[9]

---

[9] Plaintiff claims that "it is not clear why" the ALJ assigned Dr. Villarosa's opinions only "some instead of great weight." (Docket Entry 16 at 15 (referencing Tr. 19).) Although the ALJ discounted Dr. Villarosa's opinions because "he relied somewhat on [Plaintiff's] physical limitations to support his [mental] findings" (Tr. 19), Plaintiff contends that Dr. Villarosa's "primary observations appear to be based on [Plaintiff's] performance on tasks . . . to measure memory, fund[] of knowledge, insight, [and] judgment" (Docket Entry 16 at 15). Dr. Villarosa, however, diagnosed Plaintiff with "[a]djustment disorder

Third, the ALJ's restriction to "no fast paced production rate work" in the RFC (Tr. 15) (and hypothetical question (Tr. 57)) "reasonably related to a moderate limitation in Plaintiff's ability to stay on task," Grant v. Colvin, No. 1:15CV515, 2016 WL 4007606, at *6 (M.D.N.C. July 26, 2016) (unpublished), recommendation adopted, slip op. (M.D.N.C. Sept. 21, 2016) (Osteen, Jr., C.J.). In that regard:

> [T]he weight of authority in the circuits that rendered the rulings undergirding the Fourth Circuit's holding in Mascio supports the view that the non-production restriction adopted in this case sufficiently accounts for [the p]laintiff's moderate limitation in CPP. Moreover, that approach makes sense. In Mascio, the Fourth Circuit held only that, when an ALJ finds moderate limitation in CPP, the ALJ must either adopt a restriction that addresses the "staying on task" aspect of CPP-related deficits (which a restriction to simple tasks does not, at least on its face) or explain why the CPP limitation of that particular claimant did not necessitate a further restriction regarding "staying on task." Where, as here, the ALJ has included a specific restriction that facially addresses "moderate" (not "marked" or "extreme," see 20 C.F.R. § 416.920a(c)(4)) limitation in the claimant's ability to stay on task, i.e., a restriction to "non-production oriented" work, Mascio does not require further explanation by the ALJ, at least absent some evidentiary showing by the claimant (not offered here) that he or she cannot perform even non-production-type work because of his or her particular CPP deficits.

---

with depressed mood" and noted that Plaintiff "evidenc[ed] some emotional adjustment issues related to her changed physical status." (Tr. 286 (emphasis added).) Thus, Dr. Villarosa's diagnosis and resulting limitations depended, in significant part, on Plaintiff's underlying medical problems.

Grant, 2016 WL 4007606, at *9; see also id. at *7-9 (discussing authority addressing "non-production" restrictions).[10]

Under these circumstances, the ALJ adequately explained why restrictions to "simple, repetitive tasks[] with . . . no fast paced production rate work[] and few workplace changes" (Tr. 15) sufficiently accounted for Plaintiff's moderate limitation in CPP.

---

[10]    Recent cases from the Fourth Circuit addressing non-production restrictions in the context of Mascio should not change the Court's analysis. As another judge of this Court recently reasoned:

> In [Perry v. Berryhill, 765 F. App'x 869 (4th Cir. 2019)], the Fourth Circuit found fault with "the ALJ's reference to a 'non-production oriented work setting,'" as the Fourth Circuit "d[id] not know what the ALJ intended when she used that phrase," making it "difficult, if not impossible, to evaluate whether restricting [the plaintiff] to a 'non-production oriented work setting' properly accounted for [his] well-documented limitations in [CPP]." Perry, 765 F. App'x at 872. In so doing, the Fourth Circuit specifically distinguished its decision in Sizemore v. Berryhill, 878 F.2d 72 (4th Cir. 2017), where it "found that an ALJ had adequately explained a[n RFC] assessment that restricted the claimant, in part, to 'non-production jobs,'" as "the ALJ in Sizemore provided additional context, explaining that the claimant could perform work only in a 'low stress' setting, without any 'fast-paced work' or 'public contact,' to account for moderate limitations in [CPP]," which "descriptors helped to explain the restriction intended by the ALJ, and allowed [the Fourth Circuit] to evaluate whether that restriction adequately accounted for the claimant's limitations." Perry, 765 F. App'x at 872 n.1.

Ross v. Berryhill, No. 1:17CV1145, 2019 WL 1430129, at *1 (M.D.N.C. Mar. 29, 2019) (unpublished) (Schroeder, C.J.) (emphasis added); see also Thomas v. Berryhill, 916 F.3d 307, 312 (4th Cir. 2019) (finding that ALJ's preclusion of "work 'requiring a production rate or demand pace'" and "'crisis situations, complex decision making, or constant changes in a routine setting'" did not suffice under facts of that case). As in Ross (and consistent with Sizemore, as construed in Perry), the ALJ here included the additional descriptors of "fast paced" and "few workplace changes" (Tr. 15; see also Tr. 57), which "help[] to explain the restriction intended by the ALJ, and allow[ the Court] to evaluate whether that restriction adequately accounted for [Plaintiff's] limitations," Perry, 765 F. App'x at 872 n.1.

21

### 3. Function-by-Function Analysis

Plaintiff's third issue on review contends that "the ALJ's failure to properly account for the total limiting effects of [Plaintiff's] impairments and failure to provide a logical bridge between the evidence in the record, [the ALJ's] conclusions and her RFC findings is error." (Docket Entry 16 at 16 (bold font and single-spacing omitted).) In particular, Plaintiff argues that the ALJ failed to perform a function-by-function assessment of Plaintiff's work-related abilities before determining her RFC in violation of Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *7 (July 2, 1996) ("SSR 96-8p"). In that regard, Plaintiff notes that Mascio requires remand "'where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" (Docket Entry 16 at 16 (quoting Mascio, 780 F.3d at 636).) According to Plaintiff, "the ALJ offer[ed] no indication of how she reconciled her conclusion that [Plaintiff] [] ha[d] a [severe] bladder impairment . . . with her conclusion th[at] this impairment, and its resulting urinary leakage problems, would not limit her ability to carry out the demands of work [] at the medium level of exertion." (Id. at 18 (referencing Tr. 12, 15).)

RFC measures the most a claimant can do despite any physical and mental limitations.  Hines, 453 F.3d at 562; 20 C.F.R. § 404.1545(a).  An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain.  See Hines, 453 F.3d at 562–63; 20 C.F.R. § 404.1545(b).  The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy).  See 20 C.F.R. § 404.1567.  Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level.  See 20 C.F.R. § 404.1569a(c).

An ALJ need not discuss every piece of evidence in making an RFC determination.  See, e.g., Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995).  However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion."  Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).  As to the role of the function-by-function analysis in that determination, the relevant administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . .  Only after that may RFC be expressed in terms of the exertional levels of work, sedentary,

light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

The Fourth Circuit has addressed this administrative ruling and the issue of whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. Mascio, 780 F.3d at 636-37. Specifically, it stated "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested," Mascio, 780 F.3d at 636, but that "'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review,'" id. (internal brackets and ellipsis omitted) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). Here, the ALJ's decision supplies the necessary "accurate and logical bridge," Clifford, 227 F.3d at 872, between her conclusion that Plaintiff's bladder impairments qualified as severe (see Tr. 12) and her determination that Plaintiff remained able to perform a reduced range of medium work (see Tr. 15).

First, the ALJ's evaluation of the opinion evidence supports the RFC. In that regard, the ALJ noted that consultative physical examiner Dr. Vincent F. Hillman found that Plaintiff could "ambulate without difficulty," that "[he]r spine was straight and nontender," that "her gait was normal," that "[h]er grip strength

24

was 5/5 bilaterally," that her "[m]otor strength was normal at 5/5 throughout all four extremities," that her sensation and coordination remained intact, and that she "had good range of motion" in all of her joints. (Tr. 17; see also Tr. 289-90, 292.) Dr. Hillman ultimately opined that Plaintiff could "sit, stand, and ambulate without difficulty" and had "normal . . . grasping abilities." (Tr. 292.) The ALJ thus afforded "great weight to Hillman's opinion that [Plaintiff] did not have any apparent physical limitations." (Tr. 19 (emphasis added).) The ALJ also accorded "great weight" to the state agency medical consultant at the reconsideration stage (id.) who found that Plaintiff remained capable of performing medium work (see Tr. 79).

Second, the ALJ provided the following analysis supporting her finding that Plaintiff could perform a reduced range of medium work, notwithstanding severe bladder impairments:

> The [ALJ] notes that the only medical evidence during the relevant time period is dated 2011, and there are two consultative evaluations in 2014. . . . During the physical consultative evaluation, [Plaintiff] had 5/5 grip strength and no impairment to her arms. . . .
>
> Regarding the bladder problem, the [ALJ] notes that [Plaintiff] reported on November 30, 2011 that she was doing Kegels and not leaking, and in December 2011, she reported that she was "dry now" and not interested in bladder sling surgery. When confronted with these records, [Plaintiff] maintained that there was "not one day" during the relevant period that she did not have bladder leakage problems. The [ALJ] notes that [Plaintiff] obtained opinions from her urologist and her OB-GYN in 2011 regarding the best course of treatment for her cystocele and bladder prolapse. Both doctors

recommended surgery; however, [Plaintiff] did not pursue
surgery at any time throughout the relevant period.

. . .

In sum, the [RFC] is supported by medical evidence of
record (including the lack of treatment during 2012-2013)
and the results of the consultative examinations.

(Tr. 19 (internal citation omitted).)[11]  That analysis suffices.[12]

Accordingly, Plaintiff's third assignment of error does not

entitle her to reversal or remand.

### 4. Appointments Clause

The recommendation to remand this matter for further

administrative proceedings moots Plaintiff's fourth assignment of

error alleging that, "at the time [the ALJ's] decision was issued,

[her] appointment did not comply with the Appointments Clause"

---

[11] Plaintiff faults the ALJ for failing to discuss Plaintiff's statement
that "her ability to pursue treatment was negatively impacted by her lack of
insurance."  (Docket Entry 16 at 18 (citing Tr. 211).)  Although Plaintiff
indicated that lack of "funds or health insurance" adversely affected her ability
"to obtain the medical treatment and medications that [she] require[d] for [her]
conditions" as a general matter (Tr. 211), with regard to the recommended bladder
surgery specifically, Plaintiff testified that she opted not to pursue that
procedure because "the doctors did explain to [her] . . . that chances are it
does not guarant[ee] . . . that [it] was going to work for [her]" (Tr. 48; see
also Tr. 15 (ALJ's acknowledgment of Plaintiff's "testi[mony] that she did not
have [bladder] surgery because her doctor could not guarantee a good outcome")).
As Plaintiff's lack of funds and/or insurance did not constitute the reason
Plaintiff declined to pursue the recommended bladder surgery, the ALJ permissibly
considered Plaintiff's refusal to undergo the surgery as some evidence that her
bladder symptoms did not reach the level of severity Plaintiff alleged.  (See Tr.
19.)

[12] Although not raised by either party (see Docket Entries 16, 19), the ALJ
neglected to make an express finding regarding the consistency of Plaintiff's
subjective symptoms with the evidence of record as required by the Commissioner's
regulations (see Tr. 15-19; see also 20 C.F.R. § 404.1529).  Although, as
detailed above, that omission should not prevent the Court from engaging in
meaningful judicial review of the ALJ's decision, upon remand, the ALJ assigned
to rehear Plaintiff's case should ensure such a finding appears in the decision.

(Docket Entry 16 at 19 (bold font and single-spacing omitted)). "[O]n July 16, 2018[, Nancy A. Berryhill,] the [then-]Acting Commissioner of Social Security[,] ratified the appointments of [the SSA's] ALJs and approved those appointments as her own.  On the same day, the Acting Commissioner took the same actions with respect to the administrative appeals judges (AAJs) who work at the Appeals Council."  Social Security Ruling 19-1p, <u>Titles II and XVI: Effect of the Decision in Lucia v. Securities and Exchange Commission (SEC) on Cases Pending at the Appeals Council</u>, 2019 WL 1324866, at *2 (Mar. 15, 2019) ("SSR 19-1p").  Thus, the SSA will have properly appointed any ALJ who presides over Plaintiff's post-remand administrative proceedings.

Plaintiff has not requested reassignment of her case to a different ALJ upon remand (<u>see</u> Docket Entry 16) and, absent a showing of judicial bias, "'[t]o whom a case should be remanded is generally within the province of the [Commissioner's] responsibility,'" <u>Lloyd v. Astrue</u>, No. 5:09CV292, 2010 WL 2812672, at *2 (E.D.N.C. June 9, 2010) (unpublished) (quoting <u>Travis v. Sullivan</u>, 985 F.2d 919, 924 (7th Cir. 1993)), <u>recommendation adopted</u>, 2010 WL 2812674 (E.D.N.C. July 14, 2010) (unpublished). Nonetheless, "a number of courts have . . . <u>recommended</u> reassignment of [S]ocial [S]ecurity cases on remand for various reasons other than bias."  <u>Sherman v. Berryhill</u>, Civ. No. 18-439, 2019 WL 2450919, at *16 (D.N.M. June 12, 2019) (unpublished) (due

27

to ALJ's "fail[ure] to consider the medical evidence with adequate care," recommending "that the Commissioner assign th[e] case to a different ALJ on remand," but "not requir[ing] the Commissioner to do so").

In the specific context of challenges to the authority of ALJs under the Appointments Clause, SSR 19-1p provides some guidance on the matter:

> The Appeals Council will grant [a] claimant's request for review in cases where the claimant: (1) [t]imely requests Appeals Council review of an ALJ's decision . . . issued before July 16, 2018; and (2) raises . . . (either at the Appeals Council level, or previously had raised at the ALJ level) a challenge under the Appointments Clause to the authority of the ALJ who issued the decision . . . .

> When the Appeals Council grants review based on a timely-raised Appointments Clause challenge, AAJs who have been appointed by the Acting Commissioner (or whose appointments the Acting Commissioner has ratified) will vacate the hearing decision . . . . [T]he Appeals Council will conduct a new and independent review of the claims file and either remand the case to <u>an ALJ other than the ALJ who issued the decision under review</u>, or issue its own new decision . . . .

SSR 19-1p, 2019 WL 1324866, at *3 (emphasis added) (internal footnote omitted). In light of the above-emphasized language in SSR 19-1p, the Court should "recommend[] that the Commissioner assign this case to a different ALJ on remand," but "not require the Commissioner to do so," <u>Sherman</u>, 2019 WL 2450919, at *16.

## III. CONCLUSION

Plaintiff has established grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be reversed and that this matter be remanded under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings to include reevaluation of Plaintiff's educational level in accordance with 20 C.F.R. § 404.1564(b).  As a result, Plaintiff's Motion for Summary Judgment (Docket Entry 15) should be granted in part (i.e., to the extent it requests remand), and Defendant's Motion for Judgment on the Pleadings (Docket Entry 18) be denied.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

September 5, 2019